IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHERRI G. S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-CV-563-JFJ |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Sherri G. S. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for disability benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.   General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the

national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**II.     Procedural History and the ALJ's Decision**

On October 29, 2018, Plaintiff, then a 50-year-old female, applied for Title II disability insurance benefits and Title XVI supplemental security income benefits. R. 22, 209-23. Plaintiff alleges that she has been unable to work since an amended onset date of December 13, 2018, due to degenerative disc disease, chronic back pain, and spondylolisthesis. R. 247, 250. Plaintiff's claims for benefits were denied initially and on reconsideration. R. 59-127. ALJ Lantz McClain conducted an administrative hearing and issued a decision on May 27, 2020, denying benefits and finding Plaintiff not disabled. R. 22-38, 44-58. The Appeals Council denied review, and the ALJ's

decision represents the Commissioner's final decision for purposes of this appeal. R. 10-15; 20 C.F.R. §§ 404.981, 416.1481.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her amended onset date of December 13, 2018. R. 25. At step two, the ALJ found Plaintiff's degenerative disc disease, hypertension, arthritis of the bilateral hands, degenerative joint disease of the right shoulder, adjustment disorder, and mathematics disorder were severe impairments. *Id*. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 25-27.

At step four, the ALJ summarized Plaintiff's disability report, medication form, function reports, hearing testimony; the medical source opinion evidence; and the medical evidence in the record. R. 28-35. He then found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with frequent handling or fingering with the bilateral hands, and simple, repetitive tasks with occasional interaction with supervisors, co-workers, or the public. R. 27. Based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could not return to her past relevant work. R. 35-36.

At step five, the ALJ concluded that Plaintiff could perform other occupations existing in significant numbers in the national economy, including laundry sorter and folder. R. 36-37. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 37. Accordingly, the ALJ concluded Plaintiff was not disabled. *Id*.

**III.   Issues**

Plaintiff raises three allegations of error on appeal: (1) the ALJ failed to fully develop the record; (2) the ALJ failed to properly evaluate Plaintiff's subjective allegations; and (3) the ALJ's

4

finding at step five that other jobs exist that Plaintiff can perform is not supported by substantial evidence.[2]  ECF No. 14.

## IV. Analysis

### A. ALJ Did Not Fail to Fully Develop the Record

Plaintiff argues that ALJ failed to fully develop the record regarding her mental impairments.  Although the burden to prove disability is on the claimant, a social security disability hearing is non-adversarial, and the ALJ must ensure that "an adequate record is developed during the disability hearing consistent with the issues raised."  *Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004) (cleaned up).  The ALJ's duty to develop the record is limited to "fully and fairly develop[ing] the record as to material issues" and exists even if a claimant is represented by counsel.  *Hawkins v. Chater,* 113 F.3d 1162, 1168 (10th Cir. 1997) (cleaned up).  The ALJ's duty "is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts."  *Cowan v. Astrue,* 552 F.3d 1182, 1187 (10th Cir. 2008)*.*  The ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; instead, the "standard is one of reasonable good judgment."  *Hawkins*, 113 F.3d at 1168.

On February 25, 2019, Cynthia L. Reynolds, Ph.D., conducted a consultative mental status examination of Plaintiff.  R. 329-32.  Plaintiff reported that she did not know whether she had psychological problems as she had never participated in counseling or received psychiatric

---

[2] Plaintiff's argument that the ALJ's step five determination is not supported by substantial evidence is included in her "Statement of Specific Errors" but she does not develop or revisit this argument in her briefing.  Thus, to the extent Plaintiff intended to raise a step five substantial evidence argument for reasons other than the ALJ's failure to develop the record or evaluate her subjective allegations, the argument is waived.  *See Bronson v. Swensen,* 500 F.3d 1099, 1104 (10th Cir. 2007) ("[C]ursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine.") (cleaned up).

treatment.  R. 329.  As relevant to this appeal, Dr. Reynolds indicated Plaintiff had a depressed mood; restricted, somewhat flat affect; linear and goal-directed thoughts; poor insight for her psychological condition; and adequate judgment.  R. 330.  Dr. Reynolds found Plaintiff displayed difficulties with concentration and attention; adequate recent, remote, and immediate memory; concrete thinking in response to an abstract reasoning similarities task; and ability to interpret several proverbs.  R. 331.  She estimated Plaintiff's intelligence was below average and diagnosed Plaintiff with major depressive disorder, single episode, moderate.  *Id.*  Dr. Reynolds opined that Plaintiff's "observed pain and depression is likely to cause impairment in a work setting." *Id*.

In discussing the opinion evidence related to Plaintiff's mental impairments, the ALJ found Dr. Reynolds' opinion partially persuasive.  R. 34.  The ALJ agreed with Dr. Reynolds that Plaintiff had work-related limitations due to pain and depression but found that the term "impairment" was not defined in vocational terms and was too vague.  *Id.*  The ALJ then found the opinions of the state agency psychologists persuasive because their opinions were supported by a review of the evidence and consistent with other evidence of record.  R. 35.  Accordingly, the ALJ included the limitations of "simple, repetitive tasks with occasional interaction with supervisors, co-workers, or the public" in the RFC assessment, and specifically explained that no further limitations were supported in light of Plaintiff's lack of mental health treatment, hospitalizations, or prescriptions, and normal mental status examinations.  R. 27, 34.  Plaintiff seemingly contends the ALJ failed to properly develop the record because he did not recontact Dr. Reynolds for clarification before finding her opinion only partially persuasive based, in part, on her use of the word "impairment" to describe Plaintiff's functional limitations.

Contrary to Plaintiff's assertion, the ALJ was not required to further develop the record by recontacting Dr. Reynolds.  If the evidence of record is insufficient to make a disability

6

determination, the ALJ "may" take one or more actions, including recontacting a medical source, in an effort to "try to resolve the inconsistency or insufficiency." 20 C.F.R. § 416.920b(2)(i)-(iv). Nevertheless, the ALJ is not required to further develop the record if the ALJ can make a disability determination based on the evidence in the administrative record. *See, e.g., Cowan,* 552 F.3d at 1187 (holding "there was no need to further develop the record because sufficient information existed for the ALJ to make her disability determination," including a state agency psychologist's opinion). Thus, the ALJ's conclusion that a portion of Dr. Reynolds' opinion was vague does not mean that he was precluded from determining Plaintiff's work-related limitations based on the other evidence of record. The record in this case contained sufficient evidence for the ALJ to make a disability determination, and Plaintiff does not argue otherwise. *See Jones v. Colvin,* 647 F. App'x 878, 882 (10th Cir. 2016) (holding the ALJ did not err in failing to recontact a medical source where the claimant "fail[ed] to show that inconsistent or insufficient evidence prevented the ALJ from determining whether he was disabled").

In addition to Dr. Reynolds' opinion, the ALJ cited and discussed the state agency psychologists' opinions, Plaintiff's lack of mental health treatment, and the normal mental status examination findings from numerous providers as part of his RFC assessment. R. 30-35. Thus, the ALJ properly considered, as part of his overall evaluation of the evidence, that Dr. Reynolds' opinion contained vague language that did not provide a useful functional assessment of Plaintiff's abilities, and the ALJ was not required to recontact her for further clarification. In any event, Dr. Reynolds' opinion is not inconsistent with the RFC, which included work-related limitations to account for Plaintiff's pain and mental impairments.

Likewise, Plaintiff's reliance on Social Security Ruling ("SSR") 85-16 is misplaced. SSR 85-16 provides that "[w]hen medical source notes appear to be incomplete, recontact with the

source should be made to attempt to obtain more detailed information." SSR 85-16, 1985 WL 56855, at *3 (January 1, 1985). There is no indication here that Dr. Reynolds' consultative report was incomplete. A complete consultative examination should include the following elements: (1) the claimant's chief complaints; (2) a detailed description of the claimant's history of her major complaints; (3) a description, and disposition, of pertinent positive and negative detailed findings based on the history, examination, and laboratory tests related to the claimant's major complaints, and any other abnormalities or lack thereof reported or founds during examination or laboratory testing; (4) the results of laboratory and other tests performed; (5) the diagnosis and prognosis for the claimant's impairments; (6) a medical opinion;[3] and (7) some explanation or comment on the claimant's major complaints and any other abnormalities found during the history and examination or reported from the laboratory tests. *See* 20 C.F.R. § 416.919n(c)(1)-(7). Dr. Reynolds' report contains sections titled Reason for Referral, General Observations, Chief Complaint, History of Present Illness, Past History, Mental Status Exam, and DSM-5 Diagnoses and Prognosis. R. 329-331. Within these sections, Dr. Reynolds reported and commented on the results of her examination, made a diagnosis, and offered an opinion. *Id.* Because Dr. Reynolds' report was complete, the ALJ was not required to recontact Dr. Reynolds pursuant to SSR 85-16.

     **B.**     **ALJ's Consistency Analysis Was Supported by Substantial Evidence**

Plaintiff contends that the ALJ erred in evaluating her symptoms, specifically arguing the ALJ failed to link the consistency findings to the evidence in the record, evaluated her symptoms based solely on the objective evidence, and failed to support his consistency findings with substantial evidence. ECF No. 14 at 6-8.

---

[3] Notably, "the absence of a medical opinion in a consultative examination report will not make the report incomplete." 20 C.F.R. § 416.919n(c)(6).

8

In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2016 WL 1119029, at *7. If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. § 416.929(c)(3).[4]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan,* 552 F.3d at 1190 (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995)). The ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence,

---

[4] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." SSR 16-3p at *10.

The Court finds no error in the ALJ's consistency analysis. The ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 30-34. In reaching this conclusion, the ALJ discussed several inconsistencies between Plaintiff's subjective complaints and the evidence of record, including: (1) a May 2016 cervical spine imaging showing mild degenerative changes; (2) a May 2016 lumbar spine imaging showing moderate degenerative changes; (3) Plaintiff's conservative treatment for pain; (4) the lack of hospitalizations or emergency room visits; (5) the normal physical examination findings despite some back pain and tenderness with palpation; (6) the normal mental status examinations; (7) the physical consultative examination, which was normal other than decreased spinal range of motion, pain with shoulder range of motion, a decreased gait speed, and pain/tenderness of the lumbosacral spine with motion; (8) the unremarkable hip x-rays in January 2020; and (9) the lack of mental health treatment, hospitalizations, or prescriptions. R. 30-34.

Plaintiff asserts that the ALJ failed to link his consistency findings to the evidence of record and explain why the evidence relevant to each factor led to his conclusion as required by *Kepler* and SSR 16-3p. However, so long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (cleaned up). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*. As set forth above, the ALJ provided numerous reasons, supported by the record, for finding Plaintiff's symptoms were not as severe or functionally limiting as alleged. Thus, contrary

to Plaintiff's assertion, the ALJ linked his consistency findings to the evidence and provided clear and specific reasons for his determination in compliance with the directives of *Kepler* and SSR 16-3p.

Plaintiff also asserts that the ALJ erroneously based his consistency findings solely on objective evidence. *See* SSR16-3p at *5 ("We will not evaluate an individual's symptoms solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled."). Notably, SSR 16-3p does not preclude an ALJ from relying on the objective medical evidence in evaluating a claimant's symptoms; rather, it prohibits the ALJ from relying on it exclusively. *Id.* As set forth above, the ALJ considered more than just the objective medical evidence in his consistency analysis; he also considered the location of Plaintiff's pain, her conservative treatment, and her daily activities. R. 28-33.

Plaintiff further asserts that the ALJ erred in discounting her subjective symptoms based on her conservative pain treatment, citing to *Praytor v. Comm'r,* 750 F. App'x 723 (10th Cir. 2018). In *Praytor*, the ALJ diminished the claimant's credibility because she did not undergo more aggressive treatment or surgical intervention for her back pain. *Id.* at *2. Noting this was the ALJ's "primary rationale for his adverse credibility finding," the Court found the ALJ's reasoning invalid because there was no evidence the claimant's doctors prescribed more aggressive treatment or surgical intervention, and because her treatment consisted of "pain management via numerous powerful prescription pain medications," most of which were narcotics. *Id. Praytor* is distinguishable. The ALJ in the instant case did not base his consistency analysis on Plaintiff's conservative treatment alone, and there is no evidence that Plaintiff has been treated with narcotic pain medications. As the ALJ correctly noted, Plaintiff's treatment for pain has consisted of home

11

exercises and medication, without the need for hospitalization or emergent care. R. 30. The Court thus sees no error in the ALJ's characterization of Plaintiff's treatment for pain as conservative.

Finally, Plaintiff asserts that evidence exists in the record to support her subjective allegations, pointing to her diagnoses of moderate lumbar facet arthrosis, degenerative disc disease, and rheumatoid arthritis. However, the ALJ thoroughly analyzed the work-related functional limitations of Plaintiff's back and hand impairments, specifically explaining that he limited Plaintiff to light work due, in part, to her lumbar degenerative changes, and limited her to frequent use of her hands for fingering and feeling to account for her arthritis, finger and thumb nodules, morning stiffness, and early signs of rheumatoid arthritis. R. 33-35. This is sufficient consideration of the evidence identified by Plaintiff as supporting her allegations. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Because Plaintiff points to no evidence the ALJ overlooked, her argument amounts to a request that the Court reweigh the evidence, which it cannot do. *See Hackett,* 395 F.3d at 1172 ("We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence, but we will not reweigh the evidence or substitute our judgment for the Commissioner's.") (cleaned up).

V. **Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 28th day of February, 2022.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**